UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHARON BENNETT-BRADY,

               Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,
QUEST DIAGNOSTICS' LONG TERM DISABILITY
  BENEFIT PLAN,
QUEST EMPLOYEES BENEFITS ADMINISTRATION
  COMMITTEE,
QUEST DIAGNOSTICS INCORPORATED,

               Defendants.

**DECISION AND ORDER**
14-CV-635S

## I. INTRODUCTION

In this action, Plaintiff Sharon Bennett-Brady alleges that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. by erroneously terminating her long-term disability benefits. (Docket No. 1.) Defendants have filed the Administrative Record (Docket No. 20), and the parties have fully briefed their cross motions for summary judgment (Docket Nos. 21-27), which are pending before this Court. For the reasons that follow, Defendants' motion for summary judgment is granted in part and denied in part, and Bennett-Brady's motion for summary judgment is denied.[1]

---

[1] Within her motion for summary judgment, Bennett-Brady includes a blanket request to seal "the record and the contents of this motion." (Docket No. 24-1, ¶ 51.) Bennett-Brady did not file a motion to seal as required by the Administrative Guidelines, nor has she taken any action to properly request sealing since the filing of her motion. Nonetheless, because several submissions in the record detail Bennett-Brady's medical conditions and contain private medical communications, this Court will direct the Clerk of Court to seal certain submissions. Should Bennett-Brady conclude that further sealing would be appropriate, she must move separately for additional relief.

1

## II. BACKGROUND

### A. Facts[2]

#### 1. Bennett-Brady's Employment at Quest Diagnostics

Bennett-Brady began working as a dispatcher for Defendant Quest Diagnostics Incorporated ("QDI") in February 1990, when she was about 30 years old. (Defendants' Statement of Undisputed Facts ("Defendants' Statement"), Docket No. 22, ¶¶ 2, 8.[3]) As a dispatcher, Bennett-Brady answered telephone calls, scheduled drivers to pick up and deliver medical specimens, sent out supply orders, kept records, and monitored drivers' daily logs and availability. (Id. at ¶ 9.) This was a sedentary position. (Id. at ¶ 10.)

While Bennett-Brady worked at QDI, it offered its eligible employees a "Managed Disability Benefit" program that included (1) weekly short-term disability payments that was self-funded by QDI and managed by Defendant Aetna Life Insurance Company under an Administrative Services Only Agreement, and (2) a monthly long-term disability

---

[2] Defendants filed the Administrative Record on October 22, 2015. (Docket No. 20.) The next day, they filed their motion for summary judgment, complete with the Statement of Undisputed Facts required by Rule 56 (a)(1) of the Local Rules of Civil Procedure for the Western District of New York. (Docket Nos. 21-23.) Bennett-Brady cross-moved for summary judgment but failed to include the required Statement of Undisputed Facts, instead submitting a non-conforming attorney affidavit. (Docket Nos. 24, 24-1, 25.) Defendants responded to Bennett-Brady's attorney affidavit consistent with Local Rule 56 (a)(2) (see Docket No. 26), but Bennett-Brady failed to respond to Defendants' Statement of Undisputed Facts as required. Consequently, to the extent not controverted by the Administrative Record, Bennett-Brady is deemed to admit the facts contained in Defendants' Statement of Undisputed Facts. See Local Rule 56 (a)(2) (providing that a party is deemed to admit material facts not properly controverted in an opposing statement); Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992) ("When a party has moved for summary judgment on the basis of asserted facts supported as required by Fed.R.Civ.P. 56 (e) and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."); Cassidy v. Nicolo, No. 03-CV-6603, 2005 WL 3334523, at *2 (W.D.N.Y. Dec. 7, 2005) (facts asserted by the defendants deemed admitted where the plaintiff failed to file a response); Samborski v. W. Valley Nuclear Svcs. Co., Inc., No. 99-CV-213, 2002 WL 1477610, at *1-3 (W.D.N.Y. June 25, 2002) (same).

[3] Defendants' Statement of Undisputed Facts contains corresponding citations to the Administrative Record.

benefit that was underwritten by an Aetna long-term disability policy, with Aetna acting as the claims administrator. (Id. at ¶ 14.) Both plans authorized Aetna to make benefit determinations. (Id. at ¶ 15.) The long-term disability policy, which is governed by ERISA, is called the Income Protection Disability Plan ("the Plan"). (Id. at ¶¶ 4, 16.) QDI was the Plan's sponsor and administrator. (Id. at ¶¶ 6, 17.) Bennett-Brady participated in both plans.

### 2. The Plan

As it relates to certifying a period of disability, the Plan provides that "[a] period of disability will be certified by Aetna if, and for only as long as, Aetna determines that [the participant is] disabled as a direct result of a significant change in [his or her] physical or mental condition occurring while [he or she is] covered under this Plan." (Administrative Record ("AR"), Docket No. 20, p. 26.) The participant must also be under the care of a physician. (Id.)

To be disabled under the Plan, either of the following must apply:

- In the first 30 months of a certified period of disability:

    [The participant is] not able, solely because of disease or injury, to perform the material duties of [his or her] own occupation; except that if [the participant starts] work at a **reasonable occupation** [he or she] will no longer be deemed disabled.

- After the first 30 months of a certified period of disability:

    [The participant is] not able, solely because of disease or injury, to work at any **reasonable occupation**.

(Id. at p. 26 (emphasis in original).) The Plan defines **reasonable occupation** as "any gainful activity for which [the participant is], or may reasonably become, fitted by

3

education, training, or experience." (Id. at p. 45.)

The Plan further provides that no benefits are payable for any period of disability that is not certified because either (1) certification has not been received for that period, or (2) certification for that period has been requested and denied. (Id. at p. 26.) Certification of a period of disability is denied if any one of the following apply: (1) Aetna determines that the participant is not disabled; (2) the participant is not under the care of a physician; (3) the participant refuses to have an independent medical exam, when required; or (4) a requested independent medical exam report is not received by Aetna, or fails to confirm the participant's disability. (Id. at p. 26.)

Under the Plan, Aetna determines the start of a certified period of disability, and, as relevant here, the certified period of disability ends on "[t]he date certification of the period of disability by Aetna ends, and the period of disability is not recertified by Aetna," or "[t]he date [the participant] cease[s] to be disabled," whichever occurs earliest. (Id. at p. 29.)

### 3. Bennett-Brady's Claim

Bennett-Brady worked at QDI until November 29, 2001, when she left its employ due to stress and depression. (Defendants' Statement, ¶¶ 11, 13.)

On June 13, 2002, Aetna notified Bennett-Brady that her "disability absence was certified under the provisions of [the Plan] effective November 29, 2001" and that, as of June 6, 2002, she was eligible to receive monthly disability benefits from Aetna. (Id. at ¶¶ 12, 25.) This was based on Aetna's determination that Bennett-Brady could not perform the material duties of her position as a dispatcher. (Id. at ¶ 26.) She was further

advised that Aetna would periodically reevaluate her eligibility and would request updated medical information from her physician or an independent physician. (Id.) Bennett-Brady subsequently had back surgery in 2002 and hip replacement surgeries in 2003 and 2004. (Id. at ¶ 28.)

On April 1, 2004, the test for Bennett-Brady's continued receipt of disability payments changed. (Id. at ¶ 29.) Under the Plan, Bennett-Brady now had to be unable to work at any reasonable occupation, not just as a dispatcher. (Id.; AR, p. 26.) Aetna determined that Bennett-Brady met this standard based on her psychological impairments and therefore approved her receipt of long-term disability benefits.[4] (Defendants' Statement, ¶ 29.) Bennett-Brady thereafter continued to receive long-term disability benefits for about nine years. (Id. at ¶ 99.)

Then, by letter dated January 4, 2013, Aetna informed Bennett-Brady that it would be terminating her long-term disability benefits, effective January 4, 2013, because she no longer met the definition of disability under the Plan. (AR, pp. 1226-1228.) Aetna explained that since June 1, 2010, there was insufficient support in Bennett-Brady's medical records to conclude that her psychological or physical conditions continued to render her disabled under the Plan. (Id. at p. 1227.)

As it related to Bennett-Brady's psychological condition—Major Depressive Disorder and Stress—Aetna explained that its contact with Bennett-Brady's treating psychiatrist, Dr. Wendy Weinstein, and its review of relevant medical records caused it to conclude that Bennett-Brady's psychological condition no longer rendered her unable to

---

[4] Bennett-Brady was also receiving Social Security Disability Income benefits and had been since December 1, 2002. (Defendants' Statement, ¶ 30.)

5

perform the duties of any reasonable occupation, and therefore, Bennett-Brady was no longer disabled under the Plan.  (Id. at pp. 1226-1227; Defendants' Statement, ¶¶ 32-87, 91, 94, 95.)  In so concluding, Aetna recognized that its determination stood in contrast to Dr. Weinstein's opinion that Bennett-Brady's severe depression continued to render her disabled.  (AR, p. 1227.)

As it related to Bennett-Brady's physical impairments—constant pain—Aetna explained that it was unable to make a disability determination because Bennett-Brady's physician, Dr. Ellen Battista, failed to respond to Aetna's multiple attempts to obtain information.  (Id.; Defendants' Statement, ¶¶ 74, 88-90, 92-93, 96-98.)

Aetna advised Bennett-Brady that it would review additional medical information from her providers should she wish to submit it, and it explained her administrative appeal rights and her right to bring a civil action under ERISA.  (AR, p. 1228.)  In particular, Aetna suggested that the following additional submissions would be helpful:

- a detailed narrative report for the period 06/01/2010 through present outlining the specific physical and/or mental limitations related to your condition that your doctor has placed on you as far as gainful activity is concerned; physician's prognosis, including course of treatment, frequency of visits, and specific medications prescribed;

- diagnostic studies conducted during the above period, such as test results, X-rays, laboratory data, and clinical findings;

- any information specific to the condition(s) for which you are claiming total disability that would help us evaluate your disability status; and any other information or documentation you think may help in reviewing your claim.

(Id.)

### 4. Bennett-Brady's Submission of Additional Information and Administrative Appeal

On January 14, 2013—10 days after Aetna's termination letter—Bennett-Brady submitted a new Functional Capacity Evaluation completed by Rose Physical Therapy, PLLC, and endorsed by Dr. Battista, which addressed only her physical condition. (Defendants' Statement, ¶¶ 106-117.)

In a letter dated January 18, 2013, Aetna advised Bennett-Brady that it had reviewed the Functional Capacity Evaluation but found it insufficient to warrant reversal of its decision to terminate benefits. (AR, p. 1230.) Aetna found that the supplemental information failed to demonstrate a disabling physical impairment, principally because there were no exam findings, no specific testing performed, and no validity testing or raw data. (AR, p. 1230; Defendants' Statement, ¶¶ 118-119.) Aetna advised Bennett-Brady to perfect her claim by having her physician complete additional paperwork to be submitted along with updated medical records, to include any diagnostic testing. (AR, p. 1230.)

Four days later, on January 22, 2013, Dr. Weinstein sent Aetna treatment notes and a letter advising that Bennett-Brady would be appealing its decision to terminate her benefits. (AR, p. 781.) Aetna responded to this letter on February 6, 2013, with a letter to Bennett-Brady advising that she herself would have to request an appeal; her treating physician could not do it for her. (Id. at p. 1238.)

Bennett-Brady thereafter submitted her appeal request, which Aetna acknowledged in a letter dated March 13, 2013. (Id. at p. 1244.) During the course of the appeal, Bennett-Brady twice requested time to submit updated medical information,

which Aetna granted. (Defendants' Statement, ¶¶ 128-131.) On April 23 and June 27, 2013, Aetna received additional medical records from Dr. Weinstein. (Id. at ¶¶ 131-138.) Notably, Dr. Weinstein stated in an April 10, 2013 record that she told Bennett-Brady that she was in too much distress to work and that this condition was permanent. (Id. at ¶ 136.)

On June 28, 2013, Aetna advised Bennett-Brady that it would need additional time to review her appeal because it was awaiting the results of two specialty-matched clinical opinions. (AR, p. 1256.) Aetna engaged Mark Schroeder, M.D., to provide an independent physician review of Bennett-Brady's psychological condition and Stuart Rubin, M.D., to provide the same service as it related to Bennett-Brady's physical condition. (Defendants' Statement, ¶¶ 140, 141.) After their review, both Drs. Schroeder and Rubin determined that there was insufficient support to find that Bennett-Brady was psychologically or physically disabled within the meaning of the Plan.[5] (Id. at ¶¶ 142-153.)

On August 7, 2013, Aetna notified Bennett-Brady that it had completed its review of her appeal and had upheld its initial determination to terminate long-term disability benefits effective January 4, 2013. (AR, p. 1268.) Aetna provided a detailed explanation of its determination and informed Bennett-Brady that its decision was final and not subject to further review. (Id. at pp. 1268-1270.) It also once again advised Bennett-Brady that she had the right to bring a civil suit under ERISA if she disagreed with the final determination. (Id. at p. 1270.)

---

5 Dr. Weinstein was cooperative in assisting Dr. Schroeder with his review (see Defendants' Statement, ¶ 143), but Dr. Battista did not assist Dr. Rubin (see id. at ¶¶ 142, 144, 147, 150-153).

### B. Procedural History

Bennett-Brady timely filed her civil suit under ERISA in this court on August 6, 2014. (Docket No. 1.) Defendants filed answers on January 9, 2015. (Docket Nos. 8, 9.) This matter was then referred to the magistrate judge to conduct all pretrial proceedings. (Docket No. 10.) Defendants thereafter filed the Administrative Record on October 22, 2015 (Docket No. 20), and the parties filed their cross-motions for summary judgment on October 23, 2015 (Docket Nos. 21, 24). Briefing on the parties' motions concluded on November 23, 2015, at which time this Court reserved decision without oral argument.

## III. DISCUSSION

Bennett-Brady asserts two causes of action. First, she alleges that Defendants violated ERISA by erroneously terminating her long-term disability benefits. Second, she claims that Defendants' termination of her benefits constitutes a breach of contract.

### A. General Legal Principles

#### 1. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences

9

drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); it must "offer some hard evidence showing that its version of the events is not wholly fanciful," D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

In the end, the function of the court at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

This same standard applies to cross motions for summary judgment. See

Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

### 2. Standard of Review

"A denial of benefits challenged under § 1132 (a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); see Muller v. First Unum Life Ins. Co., 341 F.3d 119, 123-24 (2d Cir. 2003).

Here, Defendants stipulate[6] that *de novo* review applies because they are unable to locate the relevant policy documents that would indicate whether the more deferential arbitrary and capricious standard of review would apply. Cf. McDonnell v. First Unum Life Ins. Co., No. 10 CV 8140 (RPP), 2013 WL 3975941, at *7 (S.D.N.Y. Aug. 5, 2013) ("The plan administrator bears the burden of proving that the deferential standard of review applies.") *De novo* review therefore applies.

---

6 See Docket No. 23, p. 17 ("Due to the fact that Plaintiff's claim arose in 2001 and Aetna's relationship with QDI ended in 2005, defendants were unable to locate the policy of insurance governing the LTD benefits payable by Aetna, which would set forth whether the arbitrary and capricious standard of review applied in this action. Therefore, defendants stipulate that the Court is to review Aetna's decision to terminate Plaintiff's claim for LTD benefits *de novo*.").

*De novo* review "applies to all aspects of the denial of an ERISA claim, including fact issues." Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 245 (2d Cir. 1999). "In conducting a *de novo* review, the Court gives no deference to the insurer's interpretation of the plan documents, its analysis of the medical record, or its conclusion regarding the merits of the plaintiff's benefits claim." McDonnell, 2013 WL 3975941, at *12. Rather, the court "stands in the shoes of the original decisionmaker." Dimaria v. First Unum Life Ins. Co., No. 01 CV 11413, 2005 WL 743324, at *4 (S.D.N.Y. Mar. 31, 2005). It "interprets the terms of the benefits plan, determines the proper diagnostic criteria, reviews the medical evidence, and reaches its own conclusion about whether the plaintiff has shown, by a preponderance of the evidence, that she is entitled to benefits under the plan." McDonnell, 2013 WL 3975941, at *12 (citations omitted). In this regard, the court is generally limited to the administrative record that was before the plan administrator. See DeFelice v. Am. Int'l Life Assurance Co. of New York, 112 F.3d 61, 67 (2d Cir. 1997).

In conducting *de novo* review, however, the court must be "mindful of the Second Circuit's teaching that it is inappropriate for a court to grant summary judgment where the resolution of an ERISA benefits dispute entails adopting one medical expert's opinion over another's." Tretola v. First Unum Life Ins. Co., No. 13 CIV. 231 PAE, 2015 WL 509288, at *23 (S.D.N.Y. Feb. 6, 2015) (citing Napoli v. First Unum Life Ins. Co., 78 F.App'x 787, 789 (2d Cir. 2003) ("Such a credibility determination is appropriate at trial, but it exceeds the scope of a judge's authority in considering a summary judgment motion.")). Indeed, this Court has recognized that "[a]bsent any indication that [a

plaintiff's] treating physicians' opinions are unreliable as a matter of law, the differing opinions of [a plaintiff's] treating physicians and Defendants' reviewing physicians present a genuine dispute regarding the material fact of whether [the plaintiff] . . . is entitled to continued disability benefits."  Baumer v. Ingram Long Term Disability Plan, 803 F. Supp. 2d 263, 268-69 (W.D.N.Y. 2011) (citing Napoli, 78 F.App'x at 789).

### 3. Preponderance of the Evidence

The governing standard of proof is preponderance of the evidence.  "'To establish a fact by a preponderance of the evidence means to prove that the fact is more likely than not true.'"  Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997) (quoting 4 L. Sand et al., Modern Federal Jury Instructions ¶ 73.01, at 73-4 (1997)).  If the evidence is evenly balanced, the burden of proof is not satisfied.  See Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 731 (2d Cir. 2001) ("where the burden of proof is a preponderance of the evidence, the party with the burden of proof would lose in the event that the evidence is evenly balanced").

### B. Bennett-Brady's ERISA Claim

The parties cross move for summary judgment in their favor as to whether Bennett-Brady remained disabled under the Plan on January 4, 2013, and thereafter—due to either a psychological or physical impairment—such that Aetna should have continued to pay long-term disability benefits.  The Administrative Record contains evidence submitted by both sides in support of their diametrically opposed positions, including conflicting medical opinions concerning the extent of Bennett-Brady's medical conditions. These differing opinions, none of which is unreliable as a matter of law, present genuine

13

issues of material fact that cannot be resolved at this stage.

Bennett-Brady maintains that the medical records supplied by Dr. Weinstein support her claim that she continued to suffer from a disabling psychological condition. She argues that Aetna failed to consider the totality of the medical evidence, but rather, "cherry-picked" and relied on only those entries favorable to a non-disabled finding. For example, Aetna gave little weight to Dr. Weinstein's conclusion that she could not work due to severe depression. (AR, p. 1227.) Bennett-Brady also faults Aetna for ignoring Dr. Weinstein's treating relationship with her and for failing to give adequate weight to her lengthy course of treatment and sustained diagnosis. See Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006) ("[A] district court, engaging in a *de novo* review, [can] evaluate and give appropriate weight to a treating physician's conclusions, if it finds these opinions reliable and probative."). She further contends that the "paper review" by Drs. Schroeder and Rubin is entitled to little weight, especially as to her psychological condition, because neither doctor spoke to her or examined her. Finally, Bennett-Brady contends that her claim is supported by the Social Security Administration's finding that she is entitled to disability benefits and the fact that Aetna paid her benefits for more than a decade. See id. at 442-443 (permitting consideration of Social Security Administration findings even though non-binding); Connors v. Connecticut Gen. Life. Ins. Co., 272 F.3d 127, 136 (2d Cir. 2001) (suggesting that a factfinder may give less weight to evidence of improvement when benefits are being terminated).

As to her physical limitation, Bennett-Brady maintains that Aetna failed to properly

14

consider the results of her Functional Capacity Evaluation, which Dr. Battista endorsed and submitted to Aetna in support of Bennett-Brady's claim. That evaluation resulted in a finding that "Sharon Brady is not able to tolerate sedentary physical demand characteristic work at this time. She can not [sic] perform floor to waist height lifting due to impaired [mobility]."[7] (AR, p. 916.) Bennett-Brady further argues that Aetna had no contradictory opinion, but rather, simply relied on its own discounting of the evaluation.

In contrast, Defendants maintain that Aetna's regular review of Bennett-Brady's claim properly led it to conclude that she was no longer psychologically impaired from performing the duties of "any reasonable occupation" as of June 1, 2010. Based on three different reviews of records submitted by Dr. Weinstein for June 2009-July 2010, Aetna concluded that Bennett-Brady's condition had improved and that the medical information no longer supported a finding that Bennett-Brady was psychologically impaired from performing the duties of "any reasonable occupation." But Aetna did not act on this conclusion immediately. It continued to assess Bennett-Brady's claim through 2012 by conducting in-house clinical reviews of medical records and information supplied by Dr. Weinstein. After each clinical review, Aetna concluded that the medical documentation failed to support a finding that Bennett-Brady remained functionally impaired from performing "any reasonable occupation" under the Plan. Consequently, Aetna maintains that Bennett-Brady failed to prove that she remained disabled under the Plan due to a psychological impairment.

Aetna also determined that Bennett-Brady was not disabled from performing "any

---

[7] Rose Physical Therapy evaluated whether Bennett-Brady could perform her job as a dispatcher, not whether she could perform "any reasonable occupation."

reasonable occupation" due to a physical impairment. Aetna's review of the medical documentation dating back to 2010 revealed an absence of medical records regarding Bennett-Brady's pain-management treatment or any objective evidence of a disabling physical impairment. Moreover, Aetna's multiple efforts in 2012 to obtain supporting documentation for any physical impairment from Dr. Battista, aside from her endorsement of the Functional Capacity Evaluation, went inexplicably unanswered. Consequently, Aetna maintains that Bennett-Brady failed to prove that she was disabled under the Plan due to a physical impairment.

On appeal of those determinations, Aetna further relied on the opinions of Drs. Schroeder and Rubin. Each of them performed a clinical review of Bennett-Brady's claim and each of them disagrees with her treating physician. In his report, Dr. Schroeder disagrees with Dr. Weinstein that Bennett-Brady suffered from a disabling psychological condition and instead concludes that (1) Bennett-Brady's psychological functional impairment was not adequately corroborated by the medical evidence; (2) Bennett-Brady's subjective claim of a disabling psychological condition was inconsistent with her life activities and her recent adoption of a child; (3) Dr. Weinstein was unable to explain how Bennett-Brady's psychological condition was disabling, yet at the same time did not prevent her from adopting and parenting a young child; (4) the degree of Bennett-Brady's claimed psychological impairment was inconsistent with the minimal treatment she was receiving; and (5) Dr. Weinstein could not point to any clinical information to corroborate Bennett-Brady's claim of a disabling psychological condition. Dr. Schroeder thus opines that Bennett-Brady has not demonstrated that she is disabled under the Plan due to a

psychological limitation.

Similarly, Dr. Rubin disagrees with Dr. Battista that Bennett-Brady suffered from a disabling physical impairment and instead concludes that (1) there was insufficient medical evidence from which to conclude that Bennett-Brady suffered from a disabling condition (including the Functional Capacity Evaluation); and (2) Dr. Battista refused to cooperate despite several attempts to get her to do so. Dr. Rubin thus opines that Bennett-Brady has not demonstrated that she is disabled under the Plan due to a physical limitation.

Having reviewed the evidence, this Court finds that the Administrative Record contains conflicting reports and opinions that must be assessed at trial concerning whether Bennett-Brady continued to be disabled from performing "any reasonable occupation" under the Plan, either due to psychological or physical limitation. Consequently, because determining whether Bennett-Brady continued to be disabled under the Plan requires the weighing of competing medical opinions and assessment of credibility, neither side is entitled to summary judgment. See Aitken v. Aetna Life Ins. Co., 16 Civ. 4606 (PGG), 2018 WL 4608217, at * 21 (S.D.N.Y. Sept. 25, 2018) (denying cross motions for summary judgment due to the need to weigh dueling physicians' opinions); Sigal v. Metro. Life Ins. Co., No. 16-CV-3397 (JPO), 2018 WL 1229845, at *12 (S.D.N.Y. Mar. 5, 2018) ("[W]hen faced with a conflict between two potentially credible physician's reports, neither party is entitled to summary judgment."); McDonnell, 2013 WL 3975941, at *13 (similar); Baumer, 803 F.Supp.2d at 268 (finding that contradictions between medical opinions "require a credibility determination that can properly be made

17

. . . when acting as the fact-finder in a bench trial, but not when considering a motion for summary judgment"); Troy, 2006 WL 846355, at *11 (similar). The parties' cross motions for summary judgment on this claim are therefore each denied.

### C. Bennett-Brady's Breach of Contract Claim

In addition to her ERISA claim, Bennett-Brady alleges a breach of contract claim. But this claim is premised solely on Defendants' termination of her long-term disability benefits under the Plan. As such, it must be dismissed as preempted by ERISA. See Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 114 (2d Cir. 2008) (noting that ERISA preempts those state common law claims that seek "'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA'") (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 214, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004)); Massimino v. Fidelity Workplace Svcs., LLC, No. 1:15-CV-1046 (MAT), 2016 WL 6893609, at *2-3 (W.D.N.Y. Nov. 23, 2016) (finding state breach of contract claim preempted by ERISA); Harrison v. Met. Life. Ins. Co., 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006) (concluding that plaintiffs "state common law breach of contract and breach of fiduciary duty claims . . . are preempted by ERISA"); Lewis v. John Hancock Mut. Life Ins. Co., 6 F. Supp. 2d 244, 247 (S.D.N.Y. 1998) (holding that breach of contract claim grounded in state common law was preempted by ERISA); see also 29 U.S.C. § 1144 (a) (providing that ERISA supersedes any and all state laws relating to any employee benefit plan). Defendants' request for dismissal of this claim will therefore be granted. (Docket No. 23, p. 4 n.1.)

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part, Bennett-Brady's breach of contract claim is dismissed as preempted by ERISA, and Bennett-Brady's motion for summary judgment is denied. Before scheduling this matter for trial, the parties are directed to engage in good-faith mediation efforts to determine whether a pretrial resolution of this matter can be reached.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' motion for summary judgment (Docket No. 21) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that Plaintiff's breach of contract claim is DISMISSED.

FURTHER, that Plaintiff's motion for summary judgment (Docket No. 24) is DENIED.

FURTHER, that the Clerk of Court is directed to SEAL the entirety (including sub-parts) of Docket Numbers 20, 22, 24-1, and 26.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall confer and file a stipulation selecting a mediator by February 15, 2019.

FURTHER, that the initial mediation session shall be held no later than March 15, 2019.

FURTHER, that within 10 days of each mediation session, the mediator shall file a Mediation Certification setting forth the progress of mediation.

FURTHER, that the mediation process shall be completed by April 30, 2019.

FURTHER, that the parties shall timely comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties shall appear before this Court on May 15, 2019, at 9:00 am to report on the status of this case if it is not resolved through mediation.

SO ORDERED.


Dated: February 7, 2019
        Buffalo, New York

                                                        /s/William M. Skretny
                                                          WILLIAM M. SKRETNY
                                              United States District Judge